UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BENJAMIN R. STIBBE,

                          Plaintiff,

        v.                                         Case No. 22-cv-278-pp

TONY EVERS, KEVIN A. CARR,
and WENDY MONFILS,

                          Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2), SCREENING
COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

---

Benjamin R. Stibbe, who is incarcerated at the Wisconsin Resource
Center ("WRC") and who is representing himself, filed a complaint under 42
U.S.C. §1983, alleging that the defendants violated his rights under the First
and Fourteenth Amendments by requiring him to consent to his mail being
processed through the institution mail system. He also argues that the prison
appears to be considering opening, censoring and reviewing his legal mail. This
decision resolves the plaintiff's motion for leave to proceed without prepaying
the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

I.      **Motion for Leave to Proceed without Prepaying the Filing Fee
        (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the
plaintiff was incarcerated when he filed his complaint. <u>See</u> 28 U.S.C. §1915(h).
The PLRA allows the court to give an incarcerated plaintiff permission to
proceed with his case without prepaying the civil case filing fee. 28 U.S.C.

§1915(a)(2). When funds exist, the incarcerated person must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 7, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $174. Dkt. No. 5. The court received that fee on March 16, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the balance of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983,[1] a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of that right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The complaint names as defendants Wisconsin Governor Tony Evers, Secretary of the Wisconsin Department of Corrections ("DOC") Kevin A. Carr and Director of the Wisconsin Department of Adult Institutions Office of

---

[1] The complaint does not mention 42 U.S.C. §1983. But that is the statute that allows a plaintiff to sue a state official or employee who has violated his civil (constitutional) rights while acting in that capacity. Because the plaintiff has accused state officials of violating his constitutional rights in the course of their duties, the plaintiff's suit arises under 42 U.S.C. §1983.

Management and Budget Wendy Monfils. Dkt. No. 1 at 1, 4. The complaint names each defendant in his or her official capacity only. <u>Id.</u>

The complaint alleges that effective December 6, 2021, the DOC contracted with a new mail management service called "TextBehind" to manage all non-legal, non-privileged inmate mail. <u>Id.</u> at 2. Under the new service, the incoming and outgoing non-privileged mail of all incarcerated persons is sent to TextBehind for "processing" and the same TextBehind address is used as the return address. <u>Id.</u> The plaintiff alleges that TextBehind "made it clear that they would not handle legal mail, bank statements, health information or any other such correspondence." <u>Id.</u> The complaint alleges that the "[p]olicy for all privileged mail was to remain the same." <u>Id.</u> The DOC instituted this new policy to guard against narcotics coming into DOC facilities through mail. <u>Id.</u>; Dkt. No. 1-1 at 9.

On December 22, 2021, a memorandum from the office of defendant Monfils, on behalf of the DOC, was sent to "DAI Staff and Persons In Our Care (PIOC)." Dkt. No. 1 at 2; Dkt. No. 1-1 at 1. The memorandum notified each incarcerated person that "unless [he] would sign (DOC-2468) 'Acknowledgment of rules,' [he] as a (PIOC) would no longer receive any mail or messages." Dkt. No. 1 at 2 (bolding omitted). The memorandum states the following:

> DAI will continue to request each PIOC consent to the updated Acknowledgment of Rules and Regulations. Please be sure to re-check all the boxes on the form, not just the mail consent box. Even if signed under duress, the consent will continue to stand for the length of your incarceration as indicated on the previous and current Acknowledgment form.

4

Should an individual not check the box to receive mail, such change will go into effect in February 2022 based on operational changes that need to occur. Anyone that mistakenly chose not to provide consent, will have until January 28, 2022 to re-check the Acknowledgement form. Please contact your unit staff.

Dkt. No. 1-1 at 1. Enclosed with the memorandum was a three-page DOC 2468 form, titled "Acknowledgement of Receipt of/Access to/Information." Id. at 2–4. This form contains several provisions to which an incarcerated person has the option to consent. Id. One section is labeled "Consent to Receive Mail" and says the following:

> I understand and acknowledge that if I do not consent to receive mail and messages through institution mail services, all incoming mail and messages addressed to me will be rejected and/or returned to the vendor or post office, unopened, marked "refused" as required by the U.S. Postal Service. Therefore, I hereby consent to have my mail and messages received and processed by the institution mail services and/or the Mail Management Service Vendor contracted by the DOC. I understand that this consent remains in effect for the entire time I am housed in a correctional institution, center and/or the Wisconsin Resource Center to which I may be transferred during such period of confinement or hold.

Id. at 2–3.

The plaintiff says he spoke with "(IUS) Matt Hansen" (who is not a defendant), who confirmed the plaintiff's suspicion that unless he signed the acknowledgment form, his institution would "refuse all mail and messages" to him. Dkt. No. 1 at 2 (bolding omitted). The plaintiff asserts that Hansen "agreed" with the plaintiff "that no distinction is made regarding a difference in privileged and non-privileged mail." Id. The plaintiff alleges that Hansen told the plaintiff that "[Hansen] did not understand how the institution could d[o] this and that it was well over his head." Id. The plaintiff informed Hansen that

he would not sign the DOC 2468 because he believed its provisions violated his First and Fourteenth Amendment rights and that the language in defendant Monfils's memo "amounted to coercion." Id. at 3. The plaintiff asserts that Hansen told the plaintiff that this was the plaintiff's right and that Hansen would not hold it against him. Id.

On December 29, 2021, the plaintiff filed an inmate complaint contesting the mail policy and asserting that it violated his rights under the First and Fourteenth Amendments. Dkt. No. 1 at 3. He requested that WRC "prevent this policy" from being "enacted as the non delivery of [his] mail and messages created an undue burden to a Person In Their Care." Id. On February 2, 2022, an institutional complaint examiner reviewed the plaintiff's complaint, which she described as "referencing the updated Acknowledgement of Receipt to/Access to Information form." Dkt. No. 1-1 at 12. The complaint examiner explained that the form "is not an attempt at coercion, but rather a notification that if an individual does not give consent to have their mail processed by either the institution mailroom staff or the contracted vendor, it may not be processed by the department." Id. The complaint examiner noted that the plaintiff had not signed the form, encouraged him "to contact mailroom staff with any further questions regarding this issue" and recommended dismissing his complaint. Id. Two days later, WRC Deputy Director Sharon Harter dismissed the complaint. Id. at 11.

On February 6, 2022, the plaintiff signed an appeal of the dismissal of his complaint. Dkt. No. 1 at 3; Dkt. No. 1-1 at 14. The plaintiff reiterated that

the acknowledgement form was "coercive and unconstitutional." Dkt. No. 1-1 at 14. He asserted that the "entire process is a procedural due process violation" and insisted that "forcing inmates under duress to sign away their constitutional rights is unconscionable and shocks the morals expected of those in authority." Id.

On February 10, 2022, a corrections complaint examiner recommended dismissing the appeal. Id. at 15. The complaint examiner noted that WRC "responded to the complaint." Id. The complaint examiner explained that the mail policy with TextBehind "is similar to a number of correctional facilities throughout the United States who have converted to a mail scanning process," explained that the reason for the conversion was "to reduce the potential for contraband to enter into correctional facilities and maintain both staff and inmate health and safety," and opined that the "mail scanning service has been proven lawful and constitutional." Id. The plaintiff asserts that the complaint examiner's response "did not address the actual claim of coercion in the process of the required mail waiver [but] rather focused on the 'text behind' policy, with which [he] take[s] no issue." Dkt. No. 1 at 3. On February 24, 2022, the Office of the Secretary accepted the complaint examiner's recommendation and dismissed the appeal. Dkt. No. 1-1 at 16.

On February 22, 2022, Monfils sent out a second memorandum. Id.; Dkt. No. 1-1 at 8. The plaintiff says this second memorandum "essentially 'doubles down' on the threat to no longer deliver mail or messages." Dkt. No. 1 at 3. He

says the second memorandum "[g]oes further to explicitly include legal mail."

Id. The second memorandum provides the following:

> This memo replaces the memo posted on December 22, 2021, regarding the *Acknowledgment of Rules and Regulations* (DOC 2468).
>
> DAI recognizes the importance of communication and maintaining external personal and professional support systems. If a PIOC does not provide consent to receive mail, DAI will honor that decision. A refusal to provide consent to receive mail means that DAI will not open, examine, censor or deliver any mail addressed to the PIOC. This applies to all incoming mail as defined in Administrative Code 309.02 (12), including publications, subscriptions, IRS mail, and legal mail as defined in the DAI Inmate Mail policy, 309.04.01. . . .
>
> If you have revoked your consent to receive mail your mail while in DAI, your mail will be returned to the post office as refused. The mail will be marked as refused starting in March/April 2022 to allow our systems to be changed.
>
> Any PIOC that wishes to change their mind and provide consent by signing the Consent to Receive Mail form, should contact institution staff as soon as possible.

Dkt. No. 1-1 at 8.

In an "addendum" to the complaint, which the court received at the same time it received the complaint, the plaintiff said that he also received a second waiver to sign on February 28, 2022. Dkt. No. 1-1 at 5. He notes that the new waiver form "does not delineate between privileged and non-privileged mail." Id. He says that because TextBehind does not process privileged mail, legal mail will continue to be delivered directly to the institutions. Id. The plaintiff concludes that this new waiver "is specifically related to privileged mail." Id. He asserts that by signing the waiver, he would be allowing WRC "to open,

examine, censor and deliver mail addresse[d] to [him]." Id. (underlining and bolding omitted).

The new waiver states the following:

I understand and acknowledge that if I do not consent to receive mail through institution services, which may involve a third party vendor, ALL INCOMING mail including publications addressed to me shall be rejected, marked refused and returned to the post office in accordance to Wis. Admin. Code §§ DOC 309.04(2), 309.05(2), and DAI policy 309.04.01.

By checking the box marked I Consent To Receive Mail, I hereby allow the institution to open, examine, censor and deliver mail addressed to me through institution mail services. I understand that this consent remains in effect for the entire time I am housed in a correctional institution, center and/or the Wisconsin Resource Center to which I may be transferred during such period of confinement.

This consent may be revoked or granted during this period of confinement by notifying institution staff in writing. Allow fourteen (14) business days from the latest signed date below for the changes to the mail delive1y to go into effect.

Dkt. No. 1-1 at 6.

The plaintiff asserts that the DOC's requirement that its institutions "reject all incoming mail and messages" violates his First Amendment right "to communication by mail." Dkt. No. 1 at 4–5. He says the policy also violates his Fourteenth Amendment right to procedural due process because not having access to mail or messages makes it "likely" he will spend more time in prison. Id. at 5–6. He says the policy "is beyond atypical and significant, it is unprecedented." Id. at 6. The plaintiff alleges that Monfils's memorandum "admits that the process she enacted uses duress, a coercive tactic in an attempt to force compliance with a clearly, shockingly unconscionable act." Id.

9

at 7. The plaintiff clarifies that he is not challenging "the 'Text Behind' policy." Id. at 5; id. at 8 ("I make no issue with the processing of non-privileged mail by 'Text Behind' here.").

The plaintiff seeks preliminary injunctive relief ordering the DOC and the WRC "to deliver all mail and messages in line with long standing policy despite an absence of a signed waiver until such a time as this matter is concluded as none delivery [sic] of privileged mail violates [his] right to access to the courts." Id. at 8. He adds that any preliminary injunction should place the DOC "on notice that censoring privileged mail is an unacceptable practice." Dkt. No. 1-1 at 5. The plaintiff also seeks "Nominal Relief" of the filing fees plus $500 and punitive damages against each defendant totaling $240,000. Id. at 9–10.

C.    Analysis

1.    *Relief Requested*

The complaint names the defendants in their official capacities only. Claims against an official in his or her official capacity are another way to plead a claim against the entity that the official represents or for which the official works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The plaintiff alleges that the defendants are officials of either the DOC or the DAI, which are departments of the State of Wisconsin. Claims against a state department are "no different from a suit against the State itself," so the court construes the plaintiff's claims as if the plaintiff had brought them against the State of

Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55).

Section 1983 allows a plaintiff to sue a "person" who violates his rights while acting under color of state law. But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will, 491 U.S. at 71. In Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002), the Supreme Court clarified that "the State is not a 'person' against whom a § 1983 claim *for money damages* might be asserted." (Citing Will, 491 U.S. at 66) (emphasis added). See also, Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003) (". . . a state is not a 'person' subject to a damages action under § 1983 . . . .).

The Supreme Court has held, however, that "a state official in his or her official capacity, when sued *for injunctive relief*, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" Will, 491 U.S. at 71 n.10 (citing Graham, 473 U.S. at 167 n.14 (1985), and Ex Parte Young, 209 U.S. 123, 159–60 (1908) (emphasis added)). That exception is a narrow one—"[i]t applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (citations omitted).

The plaintiff has alleged that the defendants have subjected him to an ongoing constitutional injury. Because he has sued the defendants in their official capacities, he cannot recover damages for these alleged violations. But if the court determines that the complaint states a plausible claim for relief, the plaintiff may pursue his request for injunctive relief.

2. *Alleged Constitutional Violations*

> Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), that that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576 . . . (1974); *Rowe*, 196 F.3d at 782. An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts. *Rowe*, 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open a letter outside of the inmate's presence. See *Wolff*, 418 U.S. at 577 . . .; *Castillo v. Cook C'nty Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir. 1993).

Kaufman v. McCaughtry, 419 F.3d 678, 685-86 (7th Cir. 2005). Because incarcerated persons do not lose their constitutional rights when they walk through the institution doors, "[w]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." Turner v. Safley, 482 U.S. 78, 84 (1987) (quoting Procunier v. Martinez, 416 U.S. 396, 405-06 (1974)).

But "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Id. (quoting Martinez, 419 U.S. at 405). "Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities." Id. The

Supreme Court has concluded that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89. In determining whether the regulation is related to legitimate penological interests, the Supreme Court has said that lower courts must consider several factors: whether there is a "'valid rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it," id. (quoting Block v. Rutherford, 468 U.S. 576, 586 (1984)); "whether there are alternative means of exercising the right that remain open to inmates," id. at 90; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," id.; and "the absence of ready alternatives," id.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court held that the state could require legal mail to be "specially marked as originating from an attorney," could require the attorney to identify himself and his client to prison officials, and could open legal mail in the presence of the incarcerated person to whom it was addressed. Id. at 576-77. The Court struck a balance between the state's need to prevent contraband from coming into the institution with the incarcerated person's right to receive legal mail.

The Seventh Circuit Court of Appeals further developed the law governing an incarcerated person's rights regarding legal mail. In Guajardo-Palma v. Martinson, 622 F.3d 801 (7th Cir. 2010), Judge Posner began by describing the practical problem:

Almost all civil proceedings by prisoners pit the prisoner against employees of the prison, the prison itself, or a state or federal correctional authority. It is natural for courts to be concerned about the defendants or their agents reading the prisoner's correspondence with his lawyer, if he has one. It is like a litigant's eavesdropping on conferences between his opponent and the opponent's lawyer. The plaintiff, a Wisconsin state prisoner, claims that his constitutional rights were violated when prison guards, outside his presence, opened legal mail addressed to him.

Id. at 802.

The court explained that if prison staff were to be allowed to read, copy and distribute a lawyer's letters to an incarcerated person relating to the incarcerated person's suit against the prison or prison staff, that would give the prison a litigating advantage that could violate the incarcerated person's Fourteenth Amendment right to meaningful access to the courts. Id. (citations omitted). The Seventh Circuit noted that a number of cases treated the reading of an incarcerated person's legal mail relating to pending or impending litigation as a violation of the incarcerated person's right to free speech; the Guajardo-Palma court, however, found that "since the purpose of confidential communication with one's lawyer is to win a case rather than to enrich the marketplace of ideas, it seems more straightforward to base the concern with destroying that confidentiality on the right of access to courts (or, as we're about to point out, on the due process right to a fair hearing)." Id.

The Guajardo-Palma court went on to discuss the historical right to counsel, and thus to a hearing. Id. at 803. It said, "If the prisoner has counsel (or is communicating with a lawyer in the hope the lawyer will agree to represent him), the law's allowing his opponents to eavesdrop on his

14

communications with the lawyer would undermine the prisoner's right to be represented, at a hearing, by counsel at the prisoner's expense." Id. The court also explained that "[a] practice of prison officials reading mail between a prisoner and his lawyer in a *criminal* case would raise serious issues under the Sixth Amendment (and its application, by interpretation of the Fourteenth Amendment, to state criminal defendants), which guarantees a right to counsel in criminal cases." Id. (citations omitted) (emphasis added). And, the court observed, there was another category of "legal mail"—"communications from courts and agencies to prisoners (rather than from prisoners' lawyers), or vice versa." Id. at 804. The court stated that most of those communications involved public or non-sensitive documents, but that some could be sensitive. Id.

    After presenting this overview of the different types of "legal" mail and the constitutional rights implicated, the Seventh Circuit said:

No legal mail is sacrosanct, however. Prison officials cannot be certain, just from the return address on an envelope, that a letter is from a lawyer (or indeed from a court or agency) rather than from a criminal confederate of the prisoner masquerading as a lawyer, as in *Fontroy v. Beard*, 559 F.3d 173, 175 (3d Cir. 2009), and *State v. Steffes*, 260 Wis. 2d 841 . . . (2003). Occasionally the lawyer *is* a criminal confederate of the client, as in *United States v. Stewart*, 590 F.3d 93, 102-08 (2d Cir. 2009); *United States v. Merlino*, 349 F.3d 144, 149-52 (3d Cir. 2003); *United States v. Cano*, 289 F.3d 1354, 1359-60 (11th Cir. 2002); *United States v. Abbell*, 271 F.3d 1286, 1292-94 (11th Cir. 2001) (per curiam), and *United States v. Ross*, 190 F.3d 446, 448-49 (6th Cir. 1999). An accommodation is needed between the prisoner's interest in the confidentiality of communications with his lawyer (and of some communications with the court or agency in which his case is pending, whether or not he is represented by a lawyer) and the prison's interest in security. We call this a need for an "accommodation" rather than for "a balancing of competing interests" because ordinarily and in the present instance competing interests of the sort considered by courts in formulating rules of law can't be weighed; they

are imponderables. The realistic goal is a *via media* in which each interest is given as much effect as possible.

So on the one hand (and postponing consideration of court and other non-attorney legal mail), prison employees, who routinely and for obvious reasons of security open prisoners' incoming mail, should be permitted to open incoming mail from a prisoner's lawyer to verify that it is indeed a communication, related to current or prospective representation, from a lawyer who is authorized to practice law in the relevant jurisdiction and is in fact the prisoner's lawyer; on the other hand, the prisoner should be allowed to be present when the letter is opened.

Id. (some citations omitted).

The court acknowledged that "[p]rotection of the privacy of attorney mail in this fashion is imperfect; the prison employee who opens the letter will have to glance at the content to verify its bona fides." Id. at 805. The Seventh Circuit concluded, however, that "the imperfection is necessary to protect the prison's interest in security—and is lessened by allowing prisoners to engage in unmonitored phone conversations with their lawyers," which the court noted that the Wisconsin law allowed. Id.

As to whether opening legal mail without the incarcerated person present constitutes a Fourteenth Amendment violation of an incarcerated person's right of access to the courts, as opposed to simply a potential violation, the court concluded that the incarcerated person must make a showing "of hindrance in a claim of interference with a prisoner's communications with his lawyer." Id. at 805. The court speculated that it was "unlikely that isolated interferences with attorney-client communications in prisoner cases will block the prisoner's access to meaningful justice." Id. at 806.

The plaintiff appears to make two arguments. First, he asserts that the DOC's new practice of using TextBehind to scan, copy and print some kinds of mail forces him to make a choice—either consent to having his mail processed by Text Behind or forgo his right to receive mail. He says this constitutes coercion, and that the result of the choice to refuse to consent—that he is not getting any mail—violates his First Amendment right to send and receive mail and puts him at risk of longer incarceration. Second, he asserts that as he reads the December and February memoranda, his legal mail will continue to be mailed directly to the institution (rather than to TextBehind) and that the institution will be free to open, read and censor it.

The plaintiff is correct that he has a choice between consenting to receive his mail through the institution mail service—whatever that service is—or have it returned to the post office. He is incorrect, however, that that choice is new and has been imposed because of, or in connection with, the DOC's decision to contract with TextBehind. Wis. Admin. Code DOC §309.04 is the Wisconsin statute that governs inmate mail. Section 309.04(2)(a) says that "[i]ncoming mail addressed to inmates may be opened, examined, censored, and delivered under this section only if the inmate consents in writing to receive mail through institution mail services." Section 309.04(2)(b) says that if the incarcerated person refuses to consent in writing, "the institution shall return the incoming mail addressed to the inmate to the post office unopened marked, 'refused.'" Section 309.04(3) says that institution staff may not open or read for inspection any mail from lawyers, the governor of Wisconsin, members of the

Wisconsin or federal legislature, the DOC secretary or administrator of the Division of Adult Institutions, the Wisconsin attorney general or an assistant attorney general, federal investigative agencies, clerks or judges of state or federal courts or the President of the United States unless the security director has reason to believe the mail contains contraband and the mail is opened in the presence of the inmate. Even then, the staff may inspect the mail only to the extent necessary to determine whether it contains contraband "or if the purpose is misrepresented."

Section 309.04 is not a new law; it has been in effect since January 2015. It comports with the common law described in the cases the court has cited above. The DOC's decision to employ a third-party vendor to scan, copy and print some types of mail to and from incarcerated persons did not give rise to that law, and it does not change the requirements of that law. The December 6, 2021 memorandum, titled "New Mail Management Process," states that non-legal mail up to five pages in length that normally would go directly to the institution will instead go to TextBehind. Dkt. No. 1-1 at 7. TextBehind will make a copy of the mail, print it out and send the copy to the institution (thus eliminating the danger that paper containing controlled substances will come into the institution). Id. Periodicals, books, magazine subscriptions and newspapers will continue to go directly to the institution. Id. The memo gives options to those who want to send or receive mail without the delay that will be occasioned by the TextBehind scanning process: family and friends can "choose to electronically create and send letters, greeting cards, and drawings .

. . at an affordable cost by visiting **TextBehind.**com using a computer or by downloading the FREE TextBehind mobile app for smartphones." Id. The incarcerated person will receive the electronic mail in "high quality print form . . . ." Id. The memo specifies that TextBehind "does not accept identifiable medical or legal mail, gift cards, cash or non-scannable items in the mail," and says that those items will be returned to sender. Id. It advises that people visit https://doc.wi.gov/Pages/Home.aspx for more information about those kinds of items. Id.

If one visits the DOC website at the URL contained in the December 6, 2021 memo, one sees that there is a large, highlighted banner in the middle of the page that says, "Important Changes Regarding Personal Mail." https://doc.wi.gov/Pages/Home.aspx. There is a link titled "Review a list of Frequently Asked Questions regarding the mail change here." Id. When one clicks that link, one is taken to a list of frequently asked questions about the December 6, 2021 incorporation of TextBehind scanning. https://doc.wi.gov/Documents/AboutDOC/AdultInstitutions/Mail%20scanning%20FAQ%203-10-22%20Final%20review.pdf. The third question is, "What are some examples of things that should still be sent to persons in your care at the institution address?" Id. The answer is, "Legal mail should still be sent to the institution, as well as mail from medical providers, with an identifiable and verifiable return address. Other items that can be mailed to respective DOC facilities include periodicals, books, textbooks, magazines, subscriptions and newspapers." Id.

So—since January 2015, the plaintiff and all other incarcerated persons in the DOC have been required to either consent to having their mail processed through the institution mail services or having incoming mail returned to the post office unopened. That choice is not new; it is only the nature of the mail service that has changed. That choice does not violate the plaintiff's constitutional rights. He can consent to having his mail processed through the institution mail service (which includes, for some kinds of mail, scanning and copying by TextBehind). If he does not consent, he will not receive mail, but that is his *choice*—just as it has been since 2015.

The plaintiff also is correct that legal mail will continue to be mailed directly to the institution. It will continue to be subject to the requirements of §309.04, which since 2015 has required incarcerated persons to consent in writing to receive mail through the institution's mail services. Wis. Admin. Code DOC §309.04(2)(a). It is still the case, as it has been since 2015, that if the incarcerated person does not consent, the mail will be returned to the post office unopened, marked "refused." Wis. Admin. Code DOC §309.04(2)(b). It is still the case, as it has been since 2015, that institution staff may open legal mail in the presence of the incarcerated person if staff has reason to believe it contains contraband. Wis. Admin. Code DOC §309.04(3). Nothing about the DOC's decision to contract with TextBehind changes the requirements of §309.04(3) or the Supreme Court and Seventh Circuit law discussed above. And if ever the plaintiff believes that institution staff have opened his legal mail outside his presence in a way that has prevented him from pursuing his legal

rights in a pending or impending court proceeding, he can make a Fourteenth Amendment access-to-courts claim as to that specific event. But the DOC's decision to use TextBehind has not changed the law and has not rendered the pre-existing DOC policy generally unconstitutional.

Courts generally must permit civil plaintiffs at least one opportunity to amend their pleadings but need not do so where the amendment would be futile. See O'Boyle v. Real Time Resolutions, Inc., 910 F.3d 338, 346–47 (7th Cir. 2018); Boyd v. Bellin, 835 F. App'x 886, 889 (7th Cir. 2021). The complaint thoroughly details the plaintiff's allegations. The court cannot conceive of additional facts that would save the plaintiff's challenge to the DOC's policy requiring inmates to consent to receiving mail through the institution's mail services or the statutory procedure for opening and reviewing legal mail. The court will not allow the plaintiff to amend his complaint because any amendment would be frivolous.

3. *Preliminary Injunction*

As a final matter, the plaintiff has asked the court to issue a preliminary injunction ordering the same injunctive relief he seeks in his complaint. Dkt. No. 1 at 8. A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the

injunction. <u>Wood v. Buss</u>, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." <u>Orr v. Shicker</u>, 953 F.3d 490, 501 (7th Cir. 2020) (citing <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 22 (2008)). If the plaintiff can establish those three factors, the court must balance the harm to each party and to the public interest from granting or denying the injunction. <u>See</u> <u>Wood</u>, 496 F.3d at 622; <u>Korte v. Sebelius</u>, 735 F.3d 654, 665 (7th Cir. 2013); <u>Cooper v. Salazar</u>, 196 F.3d 809, 813 (7th Cir. 1999).

The plaintiff has not satisfied the criteria for a preliminary injunction. The court is dismissing the plaintiff's complaint and will not permit him to file an amended complaint. That means he will not succeed on the merits of his claim. Nor has the plaintiff demonstrated that he has no adequate remedy at law. For the reasons explained in this order, the plaintiff also cannot demonstrate that he will suffer irreparable harm without the injunction. If he does not consent to receive mail through the prison, it will be available to him (or to another authorized person) at post office. The court will deny the plaintiff's request for a preliminary injunction.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's request for a preliminary injunction. Dkt. No. 1.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$176** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Director of the Wisconsin Resource Center.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

23

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 26th day of April, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**